## CHAS. O'NEAL v. THE STATE.

### No. 1367. Decided March 13, 1912.

### Rehearing Denied May 8, 1912.

**1.—Local Option—Evidence—Continuance.**

Where, upon trial of a violation of the local option law, a motion for continuance was the fourth application, which wholly failed to show diligence and defendant made the same proof by other witnesses which he expected to show by the absent testimony, there was no error.

**2.—Same—Argument of Counsel—Bill of Exceptions.**

Where the bill of exceptions did not explain anything of the circumstances under which the alleged remarks of State's counsel were made, and the court charged the jury not to consider said remarks, there was no error.

**3.—Same—Evidence—Motive of Witness.**

Upon trial of a violation of the local option law, there was no error in admitting testimony to show the motive, status, and interest of defendant's witnesses, such testimony not being offered to impeach the witnesses. Following Gelber v. State, 56 Texas Crim. Rep., 460, and other cases.

**4.—Same—Information—Date of Election.**

Where the question of the failure to allege the date of the local option election in the information was not raised in the lower court, the same could not be considered on appeal. Following Meyer v. State, 65 Texas Crim. Rep., 587, and other cases.

**5.—Same—Evidence—Interest of Witness.**

While the fact that a witness was indicted for a violation of the local option law could not be admitted to impeach the credibility of the witness, it was admissible for the purpose of showing the motive, status, and interest of the witness against the State.

Appeal from the County Court of Wise. Tried below before the Hon. E. M. Allison.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*R. E. Carswell* and *Robt. Carswell*, for appellant.—On question of alleging date of election: Head v. State, 64 Texas Crim. Rep., 112, 141 S. W. Rep., 536.

On question of admitting evidence that witness was under indictment for selling liquor: Wright v. State, 63 Texas Crim. Rep., 429, 140 S. W. Rep., 1106.

On question of overruling motion for continuance: Merriweather v. State, 55 Texas Crim. Rep., 438, 116 S. W. Rep., 1148; Kirksey v. State, 61 Texas Crim. Rep., 298, 135 S. W. Rep., 124.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—By proper complaint and information appellant was prosecuted and convicted for unlawfully selling intoxi-

cating liquor after an election had been held in said county and the proper proceedings had thereon declaring it illegal to do so. He was convicted and fined $25 and twenty days in jail.

The State, by introducing proper records and judgments, showed that an election was properly held under the prohibition law, prohibition carried and the proper order and publications were made, putting it in force in Wise County in September, 1900, and that it was in force at the time the appellant was charged in this case with violating it.

The State proved by Estell Furlow, who was nineteen years old and lived all of his life in and about Alvord in Wise County; that he knew the appellant for about four years; that the appellant was running a restaurant during this time in said town of Alvord; that about 9 o'clock at night December 13, 1910, the date appellant is charged with the offense, he and John Graham went into appellant's place of business and proposed to buy some whisky from him; that appellant said he had none then but would have on the train coming from Ft. Worth to Alvord about 9:30 o'clock; that he and Graham then went to the depot and waited till the train came in; that after standing around the depot a while he went down the street to where the buggy of Roy Williams was and that he got in the buggy with Williams and drove to the appellants. That there was a suit case in the buggy filled with pint bottles of whisky; that Williams asked him to help him carry it into appellant's place; that each took five pints of the whisky, carried it in to appellant, where he was, and placed it on a table; that after waiting around a while he paid appellant a dollar bill and the appellant therefor gave him one of the pint bottles of whisky. That he marked the bottle, turned it over to the county attorney; and on the trial identified it as the whisky he had bought from appellant that night.

By John Graham, who lived about a mile from Alvord, the State proved substantially the same thing as had been proved by Furlow as to their first going to appellant before the train came in and asking him for the whisky, and appellant replying that he had none then but would have when that train came in; that after the train came in, he was at the back of appellant's place of business looking through the window and saw Furlow hand appellant a bill and the appellant hand Furlow a bottle of whisky; that Furlow then came out where he was and showed him the whisky and this witness also identified it on the trial of the case. On cross-examination, both of these witnesses testified that they had been employed by the county attorney and the constable at Alvord to get cases against persons for violation of the local option laws; that the constable furnished the money to buy the whisky and the county attorney paid them $2.50 for each case when reported and $2.50 additional upon conviction.

The appellant introduced Roy Williams who testified for him denying in effect the whole of Furlow's testimony in connection with him;

that he was in appellant's place of business that night with others and that Furlow was there but that he did not see Furlow pay appellant any money or appellant give Furlow any whisky therefor; that such transaction did not occur while he was there and he knew nothing about any such transaction. On cross-examination he said he thought he did not go to town in his buggy that night but that he walked; that a few days after that date, December 13, 1910, he was summoned before the county judge, sworn and examined by the county attorney and his testimony was taken down in writing, signed by him and produced at that time by the county attorney, and identified by him as his sworn affidavit on that hearing. He testified that at that time he did not remember being in appellant's place of business and so stated on that examination, but after leaving Decatur and on his way home, upon thinking the matter over, he remembered paying appellant a bill he owed him on one occasion and concluded that it might have been on that date; that when he got to Alvord he examined appellant's books and had a talk with him and saw that it was on December 13th that he had paid this bill and that was the date he was in appellant's place. He admitted that in his testimony before the county judge, two or three days after December 13th that he had testified he knew nothing of the time, place or circumstance of the sale by appellant on December 13, 1910.

In contradiction of his testimony the State introduced this witness' Roy Williams' affidavit previously identified by him, which was as follows: "Roy Williams, being sworn, said: I am 19 years old, have lived one mile from town of Alvord, Texas; I do not recollect whether or not I was in town on Dec. 13th, 1910, at night. I do know that I did not see Estell Furlow get any whisky from Chas. O'Neal. I did not see Estell Furlow give Chas. O'Neal any money then or any other time for whisky. I did not see ten pints setting on a table in the restaurant at Chas. O'Neal. I have no recollection of any such time or place or circumstance."

Jim Hamlett for appellant testified: That he was twenty years old, had lived at Alvord practically all of his life; that on the night of December 13th he was in appellant's pace of business, eating his supper. That appellant was there cooking; that Price Raily and his brother were there at another table and appellant was cooking for them; that Roy Williams was there; that Estell Furlow came into the kitchen and placed three or four pint bottles of whisky on the table where he was eating, in front of him; that Furlow stood there for a moment and then went out; that he, the witness, remained there some time afterwards; that Furlow did not come back and did not give to appellant any money and appellant did not give him a bottle of whisky nor did Furlow take one of the bottles placed on the table and carry it out; that the whole transaction was immediately in front of him and he could have seen it if it had occurred; that he did not know what became of the whisky; that it was not moved while he

was there; that he did not see Roy Williams bring any whisky or bottles into the kitchen before Furlow came in with the bottles, but just as Furlow came in, the front door blew open and Williams walked into the front room to shut the door, and when he returned Furlow was gone; that Williams was there for some time afterwards. On cross-examination this witness for appellant testified: "There is a case against me for violating the local option law pending in this court but has not yet been tried. Roy Williams has been summoned as a witness in my case. When I was first arrested I thought Williams was present on the occasion I was charged with selling whisky, and I had a subpoena issued for him, but I learned afterwards that he was not present and hence he will not be a witness in my case." This was all the testimony.

Appellant contends that the court below committed reversible errror in overruling his application for a continuance. His bill shows that at the April term 1911, soon after he was arrested, he had a subpoena issued for Price Raily which was duly served prior to that term of court; that the witness appeared at that term but his trial was postponed for a short time and the witness went to his home and did not return at said term of court. "That since that an attachment was applied for by this court for said witness and by him placed in the hands of Jim Davis, a deputy sheriff of Wise County; that defendant does not know whether the same was executed on said witness or not as the same is not among the papers of this cause and defendant does not know where it is; that said witness is not here for the reason as this witness is informed and believes, because the wife of said witness is sick and the witness is unable to leave her and come to this court; that defendant expects to procure the attendance of said witness at the next term of this court if the same is continued to that time." As to what this witness will testify appellant, in his motion, states that the State will rely for a conviction upon the testimony of Estell Furlow who will swear that on the occasion mentioned, the night of December 13, 1910, Furlow entered appellant's place of business at Alvord and bought and received from him a pint bottle of whisky and paid for the same; that said Raily was present on that occasion and will testify that he saw what occurred therein and that Furlow did not buy or receive from defendant any whisky and said Furlow did not pay for the same.

The court in allowing this bill of exceptions, signed it with this qualification: "This bill is signed with the qualifications that it appears to the court that this case had been called for trial three times prior to this time and had at each time been postponed and delayed by the defendant and at least one time before on the account of the witness Price Raily." The qualification of the bill shows in effect that this was the fourth application for continuance, the court stating that the case had three times prior thereto been called for trial and each time postponed and delayed by the defendant and, at

least, one time on account of said witness. Griffith v. State, 62 Texas Crim. Rep., 642, 138 S. W. Rep., 1016. Besides the application wholly fails to show diligence. Again, appellant made by two witnesses, the same proof he claims he would have made by the absent witness Raily. This being the case, the court did not commit reversible error in overruling the motion for a continuance. Easterwood v. State, 34 Texas Crim. Rep., 400; Haliburton v. State, 34 Texas Crim. Rep., 410; Blain v. State, 34 Texas Crim. Rep., 448; Bluman v. State, 33 Texas Crim. Rep., 43; Thompson v. State, 33 Texas Crim. Rep., 217. It is unnecessary to cite other cases to this effect.

Appellant has three bills of exceptions to remarks by the county attorney in argument to the jury. Some of these remarks ought not to have been made. Others, or even all of them, may have been justified by what occurred at the time. The bills do not explain anything of the circumstances under which the remarks were made, nor show what the record contained so that the court can determine whether they were improper or not, but even if they were improper the court at the appellant's request, specially charged the jury in writing each time to not consider the remarks of the prosecuting officers objected to by appellant. Under the circumstances, as this matter is presented, no reversible error is shown.

Appellant's second bill shows that while a witness, Jim Hamlett, was testifying in his behalf he was asked by the State's counsel if he was not indicted and a case pending against him in the County Court of Wise County where he was charged with selling intoxicating liquors in violation of the local option law and if Roy Williams was not a witness for him in the case, to which the witness answered that there was such case pending against him which had not been tried and that Roy Williams was a witness for him in said cause; that he had said witness summoned, thinking he, the witness, was present on the occasion in which he was charged with selling intoxicating liquor, but that he had since learned that said witness was not then present and he had been discharged as such witness. The appellant objected to these questions and the answers of the witness thereto because the testimony was irrelevant and immaterial and did not tend legitimately to impeach the witness and was improper for that or any other purpose and was calculated to prejudice the jury against the witness. The court overruled these objections and in approving the bill qualified it. We do not understand the extent of the qualification. Evidently, something is left out by the clerk in copying this portion of this bill. What we understand from the qualification, however, is that because of the pending prosecutions against the witness Hamlett which are called the bootlegging cases from Alvord, that Roy Williams was a witness in all of them and especially in the cases against the appellant in this case and said witness Hamlet; that the witness Hamlett was under indictment for bootlegging whisky at Alvord and that the testimony was legitimate

and proper as to the weight to be given to the testimony of these two witness. We do not understand—because of the evident defect in copying the qualification to the bill—whether the court held that it was proper to prove that there was a case against Hamlett for the purpose of impeaching his testimony or not. If that was the holding, it has been too often held by this court that such testimony is not admissible for the purpose of impeaching the testimony of a witness. But as we understand the matter, this testimony was sought and admitted for the purpose of showing the motive, status and interest of both the appellant's witnesses, Hamlett and Williams, and in our opinion it was admissible for that purpose.

This court has all the time held that the interest, feeling and animus of a witness is always material to go to the jury and such testimony is never collateral or irrelevant; that the bias and the prejudice that is shown in most cases is of the utmost importance and is always material in order to enable the jury to form a correct judgment as to the credit to which the testimony of the witness is entitled. This question has recently been discussed and the authorities cited in opinions of this court by Presiding Judge Davidson in the recent case of Earle v. State, 64 Texas Crim. Rep., 537, 142 S. W. Rep., 1181, and Pope v. State, 64 Texas Crim. Rep., 51, 143 S. W. Rep., 612. In the latter case this court discussed the question fully and in holding that such testimony was always admissible, cited the following cases, and said: "Watson v. State, 9 Texas Crim. App., 245; Daffin v. State, 11 Texas Crim. App., 79; Hart v. State, 15 Texas Crim. App., 235, 49 Am. Rep., 188; Rosborough v. State, 21 Texas Crim. App., 675, 1 S. W. Rep., 459; Tow v. State, 22 Texas App., 184, 2 S. W. Rep., 582; Brownlee v. State, 48 Texas Crim. Rep., 249, 122 S. W. Rep., 386; Sapp v. State, 77 S. W., 458; Reddick v. State, 47 S. W. Rep., 995.

"Even where a witness admits his bias or prejudice, the extent of this may be shown. Mason v. State, 7 Texas Crim. App., 623; Magruder v. State, 35 Texas Crim. Rep., 219, 33 S. W. Rep., 233; Lyon v. State, 42 Texas Crim. Rep., 506, 61 S. W. Rep., 125.

"Defendant may also prove facts which show motive on the part of the witness to testify against him, or which show that the witness is testifying under circumstances which make it necessary to testify against defendant in order to save himself. Watts v. State, 18 Texas Crim. App., 384. Defendant may also show animus and prejudice on the part of the State's witness towards him and its extent. In such examination great latitude is allowed when the object is to impeach the credit of such witness. Mason v. State, 7 Texas Crim. App., 623; Blunt v. State, 9 Texas Crim. App., 235; Daffin v. State, 11 Texas Crim. App., 79; Watts v. State, 18 Texas Crim. App., 383; Tow v. State, 22 Texas Crim. App., 184, 2 S. W. Rep., 582; Bennett v. State, 28 Texas Crim. App., 540, 13 S. W. Rep., 1005; Lyon v. State, 42 Texas Crim. Rep., 506, 61 S. W. Rep., 125. Motives which

operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. A party may prove declarations of the witness which tend to show bias, interest, prejudice, or any other mental state or status, which, fairly construed, might tend to affect his credibility. In addition to the cases already cited, see Sager v. State, 11 Texas Crim. App., 111; Bonnard v. State, 25 Texas Crim. App., 195, 7 S. W. Rep., 862, 8 Am. St. Rep., 431; Green v. State, 54 Texas Crim. Rep., 7, 111 S. W. Rep., 933; Gelber v. State, 56 Texas Crim. Rep., 462, 120 S. W. Rep., 863."

There being no reversible error, the judgment will be affirmed.

*Affirmed.*

### ON REHEARING.

### May 8, 1912.

PRENDERGAST, JUDGE.—For the first time by a motion for rehearing herein, appellant contends that the complaint and information are fatally defective because the date of the election whereby prohibition was put in force in Wise County was not alleged. The question was in no way raised by the appellant in the lower court. This question has been fully discussed, the authorities cited and the question held adversely to appellant's contention in the case of Meyer v. State, 145 S. W. Rep., and Hamilton v. State, 145 S. W. Rep., 349.

The only other question urged by appellant on rehearing is that the court permitted the State to ask the defendant's witness Hamlett, if he had not been indicted and there was then a case pending against him in the County Court of Wise County, wherein he was charged with selling liquor in violation of the local option law, and if another of defendant's witnesses, Roy Williams, was not a witness in his case also. The original bill of exceptions on this point has been sent up and is now before us, which makes clear what was stated in the original opinion to be somewhat obscure, because of apparent mistakes by the clerk in copying the qualification by the judge to the bill.

As stated in the original opinion, the fact that a witness had been indicted or prosecuted for a violation of the prohibition law, merely a misdemeanor, could not be proven to impeach the credibility of the witness, and if that had been the only purpose or use to which such testimony could have been put in this case, such evidence would have been clearly illegal as has been often held by this court. See Wright v. State, 63 Texas Crim. Rep., 429, 140 S. W. Rep., 1105, where some of the cases to that effect are cited. But that was not the purpose and use to which the State put this testimony, but it was for the purpose of showing the motive, status and interest of the witness Hamlett against the State in this prosecution. As shown in the original opinion, this is always permissible. The authorities are fully cited in the original opinion.

Certainly if the status and interest, and prejudice against the

State of Roy Williams could have been shown by him when he was upon the stand by showing that he was a standing witness for the several persons against whom these prosecutions for violating the prohibition law were prosecuted, as seems to be conceded by appellant in his argument of this question on rehearing, then certainly the State would not be precluded from proving it by any other witness who knew the fact as was done by making the proof by Hamlett in this case. That it could also have been proven by Williams himself but was not, did not make it inadmissible to prove it by another witness.

The motion will be overruled.

*Overruled.*