# JUNE, 1925.

## PAT WALSH v. THE STATE.

### No. 8365.    Delivered June 26, 1925.

**Rape—Evidence—Erroneously Admitted—Reversible Error.**

Where on a trial for rape the father of prosecutrix was permitted over the objections of appellant, to testify that he waited until Friday to file the complaint against appellant "Because I aimed to kill him" the cause must be reversed. Such testimony was tantamount to the expression of witness that appellant was guilty. and deserved to be killed for his offense. Following Adams v. State, 105 S. W. 197.

Appeal from the District Court of Hemphill County. Tried below before the Hon. W. R. Ewing, Judge.

Appeal from a conviction of rape, penalty eight years in the penitentiary.

The opinion states the case.

*Frank Willis,* for appellant.

*Tom Garrard,* States Attorney, *Grover C. Morris,* Assistant States, Attorney for the State.

On admissibility of testimony the state cites; Manly v. State, 153 S. W. 1138; Maclin v. State, 144 S. W. 956; Comegys v. State, 156 S. W. 642.

BERRY, JUDGE.—Appellant was convicted in the district court of Hemphill County of rape on Mary Parker, a female under the age of eighteen years, and his punishment assessed at confinement in the state penitentiary for a term of eight years.

The testimony of the alleged injured party shows the offense to have been committed at night on the road between the town of Spear-

man and the home of Howard Davis, a neighbor with whose family prosecutrix was temporarily staying while her parents were visiting a sick daughter in Oklahoma. The offense is alleged to have occurred on Wednesday night. George Parker and his wife, prosecutrix's parents, did not return home until the following Sunday morning and no complaint was filed until Friday following their return. It was the contention of prosecutrix that the act of intercourse to which she testified was without her consent, and she deposed to being sore and suffering as a result, thereof. Her testimony shows that she associated with various neighbor women and with her brother and sisters in the meantime, yet she did not make complaint of the assault to anyone from Wednesday night until her parents returned home on Sunday morning. There is no medical testimony in the record showing her physical condition subsequent to the alleged assault. The testimony of prosecutrix, however, if true shows that on the night in question she was about fifteen years of age and that appellant had carnal knowledge of her. She is more or less cogently corroborated on matters relevant to the issues involved. Appellant testified in his own behalf and made a sweeping denial of the material testimony of the prosecutrix, and there is some testimony in the record corroborating him. This is a sufficient statement of the facts to enable us to pass on the only question we care to discuss in the case.

Appellant seriously complains in his bill of exceptions No. 12 at the action of the court in permitting the State over his objection to ask the witness George Parker, the father of prosecutrix, the following question, and also to the answer of said witness thereto; ''Tell the jury why you waited, when you got back Sunday morning, until Friday to file the complaint,'' and the witness answered, ''Because I aimed to kill him, I didn't see this defendant at any time from the time I got home Sunday morning until the time of the filing of the complaint; the first time I ever saw this defendant was right here at Canadian at the court house when the grand jury was in session at the beginning of the court.'' The appellant objected to said testimony for the reason that same was inflammatory, prejudicial, irrelevant and immaterial, and permitted the witness George Parker to announce in the presence and hearing of the jury his opinion as to the guilt or innocence of the defendant, and because it permitted testimony to go to the jury that it was the intention of the father of prosecutrix to kill defendant. Bills of exception Nos. 11 and 12 show the admission of similar testimony over practically the same objection. The court qualifies each bill with the statement: ''The testimony complained of in this bill of exception was admitted because of the cross-examination of the witness George Parker by counsel for defendant, as shown by statement of facts, pages 44 and 45.''

The cross-examination shows that the witness was asked certain questions seeking to elicit from him the admission that after he heard

of the alleged assault and before complaint was filed, he sought the aid of the witness Davis to help him extort money or a car from the defendant. This he very bitterly denied and in doing so used language and an epithet that has not infrequently caused serious consequences. Following this vehement denial, witness admitted that the complaint was not filed until Friday after he reached home the prior Sunday. We have made a careful study of the cross-examination and fail to find anything therein that justifies the admission of the testimony complained of. We are cited by the State's attorneys to the case of Manley v. State, 153 S. W. 1138; Maclin v. State, 144 S. W. 956; Cemegys v. State, 156 S. W. 642, and other cases of similar import as being authority for the admission of this testimony under the court's qualification of the bills. These cases in our opinion go no further,—nor indeed does any other case to which our attention has been called,—then he hold that it is permissible to allow the witness to be interrogated about any fact that will eludidate or explain his testimony given on cross-examination, but they do not go to the extent of permitting a witness under the guise of clarifying or explaining his testimony to give his purpose and intent to kill the person on trial. To do so would transgress the rule which precludes a witness from giving his opinion of the guilt or innocence of the accused, and it would be tantamount to permitting him to tell the jury that in his opinion the defendant was not only guilty but that the proof was so evident and the crime so grave as to make nothing less than death a commensurate punishment. This would be a monstrous doctrine, and its bare statement makes it repulsive to every idea of such a fair and impartial trial as every person is entitled to receive under our Constitution and laws.

This identical question was before this court in the case of Adams v. State, 105 S. W. 197, under facts very similar to those in the case. We note the following from Judge Brooks' opinion in that case: While Mrs. Ayers, prosecutrix's mother, was on the stand she was permitted over appellant's objection to state that, when she went to the home of defendant after the alleged offense, if she had met defendant she thought she would have killed him. The trial court sought to justify the admission of this testimony on the ground that defendant had cross-examined the witness as to her purpose in going to his house and had sought to show that she had gone over there to get an address of a Mr. Foster, and that she was mad at defendant about a debt due her little boy. Under these conditions Judge Brooks held the admission of the testimony to be reversible error, saying:

"The fact that prosecutrix's mother may have thought the appellant guilty, and may have had evidence to her mind sufficient to warrant her in seeking appellant and killing him, is not legitimate evidence to go before a jury in passing upon the guilt or innocence of ap-

pellant, but his guilt must be predicated upon the testimony of witnesses sworn and the evidence given according to law.' See also McIntox v. State, 210 S. W. 659.

Because the court erred in admitting the testimony complained of, it is our opinion that the judgment should be reversed and the cause remanded.

*Reversed and Remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.